Counsel. Thank you, Judge O'Scanlan, and may it please the Court, I'm David Frederick for Fidelity. This case raises important issues concerning the rights of non-pros. Mr. Frederick, before we get started, how are we going to allocate time on both sides here? Well, we assume we have 20 minutes. All right. And then the other side has a total of 20. That's correct. All right. Very good. And I would like to reserve some time for rebuttal. You may do so. Fidelity is a non-party to this action and seeks to protect the confidentiality of its business secrets. Even though the trial ended last year, Fidelity is here today because it is a repeat player. It routinely receives civil investigative demands from the government, has received six in the last year, with one more believed to be imminent. As a result, the issues that are posited here today are capable of repetition, yet evading review. The fact that we've waited a year now since the end of the briefing to get an oral argument date and the trial has ended suggests that this kind of issue is difficult to get through the normal appellate process. We did everything we could to get before this Court. We brought a petition for mandamus and emergency appeal. All of those efforts were set back. Isn't this case moot at this point? No, it is not, for three reasons. First, the doctrine of capable of repetition, yet evading review, falls squarely within this type of circumstance, where the normal means of obtaining appellate review would simply be too slow for the pace of the litigation as it has arisen. All right. Is there any showing that there's something out there right now that would be affected by our interpreting this as not moot? That was going to be my second point, and that is that these documents are still in Oracle's possession. They have not been destroyed or turned back, to our knowledge. Pending the resolution of this appeal, wherever this appeal may go, those documents are still operating under the protective order that the judge entered in this case that permits Oracle's in-house counsel to have access to them. If the documents have, in fact, been returned and are no longer in the possession of counsel, then this is then it would be moot, wouldn't it? No. My third argument, Judge Goodwin, is that the information that was permitted to be disclosed is still subject to disclosure standards that would give Fidelity an opportunity to bring an action under the California Uniform Trade Secrets Act. So if there was a declaration by this Court that the blanket disclosure by allowed by the judge and the access to in-house counsel somehow did create an inadvertent disclosure, we would have an opportunity under that statute to bring an action for wrongful use of this information. If the documents are disclosed to counsel under seal and are later returned to the custodian of the files wherever they came from, then there's no case for controversy. It's still alive, and you get one of these munching-wear vacation, we call them. But and wouldn't this be eligible for a munching-wear vacation if the documents are counsel had a peek-a-boo look at them, but they're still under seal, and they would be in contempt of court if they released them? It certainly would be appropriate to issue a munching-wear order in this circumstance, and we would urge the Court to do so for reasons of judicial administration. We cited a case in our reply brief, a Fourth Circuit case called N. Ray Pruitt, which is on page 14. The citation of that case is on page 14 of our reply brief. And that case raised a very similar type of problem. A discovery order had been issued by the district judge, and when the government petitioned for mandamus to have that order withdrawn, the discovery demand was withdrawn, a voluntary action, if you will, to try to moot the government's appeal. And what the Fourth Circuit said in citing a number of cases from other circuits, but no cases from this circuit, said that when there are issues of judicial administration, the reasons animating the capable of repetition yet evading review doctrine should be dealt with in an appropriate manner so that the course of appeals have an opportunity to render decisions that would guide the conduct of the district courts. There is no decision in any court of appeals under the Antitrust Civil Process Act, the ACPA. And the reason we submit is because when parties like or nonparties like Fidelity get enwrapped up in the kinds of actions that the government brought here, they're simply no time to be able to assert their rights and vindicate them on appeal. What the district court did here was it sanctioned an expedient action on the part of the parties to turn over the entire civil investigative demand file that the government had accumulated in its months-long investigation without giving them the confidentiality protections that 1313c demands of the government. It didn't even follow the Rule 26a1 initial disclosure standards, which would allow for initial disclosure only if the documents are to advance a claim or defense of the disclosing party. Alitoso, the key documents actually used in the prosecution of the trial? To the contrary. Most of the documents that Fidelity turned over, there's no claim that there was any use at all. Wait, wait. I thought I can understand if you're talking about the mass of documents, but I thought there were seven particularly sensitive documents that you were most exercised about. That's right. And to clarify my question goes to those seven documents. Weren't they used to prepare witnesses for depositions given to expert witnesses as part of their work used at the trial? They were not used at the time the government launched its complaint. There was no contemplation of use as to those documents. Question.  No, but the question. This goes really to the mootness issue. Weren't those documents actually used? Not all of them. All right. How many of them? We know that at least four were used by the attorney. Four out of the seven. Four out of the seven were used. Now you're complaining about three. Well, no. Even as to those four, Judge Talman, we have a claim under the AT&T case which the definition of use, and the AT&T case set a standard that was not met here. That is, that the government determines before it intends to use them that there will be a use, and that was not satisfied at the time the disclosure was made. So the fact that we had to turn over all these documents and provide a road map, if you will, for Oracle, doesn't satisfy a mootness concern because the cat had already been out of the bag at that time. Well, it is a chicken-and-egg problem. I mean, in order to conduct reasonable discovery, the Justice Department issues its civil investigative demands, and it can't know at the beginning of the investigation where the documents are going to lead it. I'm not sure how — I'm not sure what you're asking us to do in terms of guiding the district courts. A protective order is the classic way that we ensure that no harm will befall the owner of the document from release of — and it looked to me like Judge Walker entered a pretty comprehensive protective order. We're asking for two things, Judge Talman. Number one, we're asking this Court to say that before CID materials can be disclosed by the government in an antitrust action, it has to make a determination with particularity that it will use those documents. That was not done here. Secondly, if that use determination is made — Kennedy, you say use those documents. Would it be sufficient under the test that you're trying to get us to adopt, if in response to the Rule 16 pretrial order, that the documents were listed as potential exhibits that might be used either on direct or cross-examination of witnesses, or would you require more? Well, the AT&T Court went through this, and I would direct the Court's attention to that. We cited it in both of our briefs. But that's a comprehensive opinion in which it explains that uses are for things like pretrial exhibits, for uses in depositions of witnesses, for propounding interrogatories and discovery requests, for backup to the complaint. Here, none of that was done. It was simply a blanket disclosure that went beyond even the normal initial discovery process of Rule 26a, and we object to that. But secondly, as to your point about the documents actually used in the litigation, we would ask this Court to follow the decision in the Densply case, or not to follow it, but to make it the law of the Ninth Circuit, and to opine that only in extraordinary circumstances, if that dissemination of documents is going to be made, would it be Well, but it wasn't Densply the case where the general counsel – there was only one general counsel here. We've got 55. We've got them divided up like a law firm with different departments, and Judge Walker essentially approved – he didn't use the term, but he essentially approved a Chinese wall between the two Oracle in-house lawyers and the rest of the general counsels. Judge Tolman, the problem here is that the people that were approved by Judge Walker were the very people who had approved and been working with Oracle in the Hart-Scott-Rodino pre-merger clearance process. The judge said they aren't involved in competitive decision-making because they don't do the licensing for Oracle of its software, but these are the very people who are advising the executives in the company on what would be the relevant market, how the department would The fact that Judge Walker found that the – that there had recently been a change of counsel and – of outside counsel, and that these two in-house lawyers were needed in order to, in essence, represent the client's interests in getting the new outside counsel up to speed. I think if you look at the documents themselves, and we file them under seal as Volume 3 of the excerpts of record, it will be clear to you why Fidelity cares so much about these documents and why the access to in-house counsel is so sensitive. Those documents are forward-looking business plans that contain the most sensitive kind of economic and commercial information. The outside counsel, Judge Tolman, had absolutely no problem understanding the significance of those documents and why they were important to Fidelity. And, in fact, they will tell you now that throughout this process they kept their But they did that at a very high cost. And that cost was the use of the access and the potential access to coerce further discovery from Fidelity that it otherwise would not have been able to do. And it knew what the documents were. So under the threat that they would be turned over to in-house counsel, Oracle repeatedly extracted discovery concessions. You're not arguing, are you, counsel, that the information cannot be compelled at all? You're arguing that it must be, if it has to be compelled because it's relevant to the subjects of the antitrust investigation, it just needs to be better protected than it was. We're saying two things. It does need to be better protected, but there also needs to be an extraordinary showing of need. And what the Densply Court did was apply a three-part test, which we think properly vindicates the interests of nonparties in these CID situations. Number one, it said the court should make an extraordinary showing that these documents have to be disclosed to in-house counsel. Number two, that the filtering mechanisms between outside counsel and in-house counsel have to be shown to be inadequate. And number three, that the representations made by outside counsel have to be shown to be insufficient to advance the interests of the client. Here, none of those had been shown. In fact, what the Court did was to apply the Brownback test, which we think is perfectly appropriate when there's private litigation between two parties, but doesn't take into account the interests of a nonparty that has provided sensitive information to facilitate the government's investigation in law enforcement. Kennedy. Why would it be any different? Why wouldn't Brownback cover the situation? Why would it be any different if we're talking about nonparties? Well, Brownback concerned very sensitive information in which two litigants were fighting with each other. And the question is, how do you vindicate the interests of the litigants to advance their claims against a claim that there might be an inadvertent disclosure? Here, Fidelity is a complete innocent bystander to this. We provided this information. But Fidelity has very articulately identified its concerns. And that is in front of Judge Walker. And Judge Walker erred by not taking into account the very high risk of inadvertent disclosure and not requiring Oracle to make the extraordinary showing that would It provided this mechanism for DOJ to get information. It only includes provisions in the protective order that say you can't even transmit these documents through an Oracle server. It has to be a completely separate, dedicated mechanism. I mean, that looked to me to be pretty extraordinary, based on my experience with protective orders. It certainly was an extraordinary measure. But, Your Honor, when an in-house counsel has the capacity to see the information which is in Volume 3, and now we know through public sources that Oracle is, in fact, seeking to acquire an entity that was a CID recipient in this very investigation, it's pretty clear, I think, that you could be as well-meaning and as ethical a lawyer as possible, but still be affected by the information that you might glean that would be highly sensitive. But the logical extension of your argument is to, in essence, impose a blanket rule that in-house counsel must never be allowed to see this type of information. No. What the Densply court said is that there has to be an extraordinary showing. And we think that there ought to be a presumption when you provide government-compelled process to obtain information from nonparties who are facilitating the government's investigation so that those confidentiality of the interest can be vindicated. Because if you don't, here is the consequence, that a recipient of a CID will think at the very beginning, the government's promise of confidentiality is not worth the paper that it's written on. I'm going to fight it from the get-go. And that would have terrible policy consequences, because the government issues about 700 of these CIDs per year. And if you have district courts all around the country taking claims by CID recipients that are attempting to seek further protection or to narrow the scope of the CID, then you're going to bring a very significant halt to the government's investigative efforts. If I could reserve the floor. Kennedy. What is the standard of review with respect to what Judge Walker did under Brownback? Well, under the application of what we have, our third issue would be abusive discretion. Whether or not he should have considered the policies of the ACPA is an error of law that is subject to de novo review. And our first issue is also de novo. Thank you. Thank you. Good morning. Good morning, Your Honors. My name is John Fonte. I'm from the U.S. Department of Justice, representing the United States. Your Honors, the government believes that this case ---- Mr. Rennie, before you get started, how do you and Mr. Yates propose to allocate the 20 minutes? Yes, Your Honor. This morning, I will be using Appley's first 10 minutes to address the ACPA issue that Fidelity has raised. And Mr. Yates, who represents Oracle, will address the seven highly sensitive documents issue. Thank you. The government believes that this case should be dismissed because Fidelity waived its claim under the Antitrust Civil Process Act, or the ACPA, and because Fidelity's claim regarding its seven highly confidential documents is moot. Not only did Fidelity fail to raise the ACPA issue below, but it repeatedly told both this Court and the district court that it had no issue with production of its documents to outside counsel. At the hearing, Fidelity expressly told the court that it was content, it said, with the protections that were in place with respect to outside counsel. And in their mandamus reply in this court, which is quoted on page 15 of the United States Court of Appeal, Fidelity explained why it was content with disclosure to outside counsel. It stated that most of the documents produced were contracts between Fidelity and Oracle, and that because there was not going to be public disclosure of those documents under the protective order, the documents themselves presented no concerns if disclosed to Oracle's counsel, including internal counsel, and they are adequately protected by the district court's order. Also, in the district court, Fidelity suggested to the court that it employed the brown-bag approach or have Fidelity utilize the brown-bag approach of having outside counsel review the seven highly sensitive documents to see if disclosure to inside counsel was essential. Under these circumstances, Fidelity's complete acquiescence in allowing outside counsel to review its entire CID production without any complaint whatsoever constitutes a total waiver of FESCO's ACPA claim. But even if it is not waived, Fidelity is wrong with its ACPA argument. Both the language of the statute and its legislative history confirm that although the CID material is afforded complete confidentiality during the investigative phase, excuse me, when an investigation leads to a civil action, the defendant is allowed full discovery of CID materials under the Federal rules. Now, this morning, Fidelity quoted 15 U.S.C. 1313C, and that does, in fact, apply to the document custodian during the investigation. And that expressly states that while the documents are in the possession of the custodian, no CID material shall be available for examination by any individual other than a duly authorized DOJ employee. However, 15 U.S.C. 1313D, which discusses and rules utilization of investigative material, it states that the custodian may give a division attorney appearing in a litigation CID material for official use as that attorney determines to be required. The statute, therefore, gives the attorney appearing in the case broad discretion on how to use CID material, and certainly complying with valid CID requests I'm sorry, valid discovery requests is official use within that discretion. In fact, nothing in the statute suggests that it alters in any way the government's discovery obligations under the Federal rules. In fact, the legislative history confirms that this interpretation is correct by drawing an unequivocal distinction between the investigation and any resulting litigation. Would it be fair to say that the ACPA is essentially a mirror of the Rule 60 grand jury material protection in a criminal investigation, that once the indictment, or in this case, the civil complaint is filed, then to some extent the shroud of secrecy has to be lifted because of the interests of the parties in having access to the information for trial? Yes, Your Honor. I think in the legislative history, Congress said that it is similar to that in the to the extent that once the civil action is commenced, the defendant has to have access through discovery process to relevant material in the possession of the United States that is relevant or likely to lead to relevant evidence to its defense. And the committee stressed that nothing in the bill in any way altered the rules. Your Honor, as Congress enacted the ACPA to assist the division in accomplishing its antitrust enforcement effort, the division has very strong incentive to encourage voluntary cooperation with our CID requests. And while I do not want to dwell on the argument regarding the seven documents, in terms of the voluntary cooperation in the brown bag test that the district court applied, we agree with Fidelity on that point, as we stated in our brief, that encouraging voluntary cooperation with the CID requests is very, very important to the Department's enforcement effort. Congress passed this Act. If you read the first few pages of the House report, it explains that Congress passed this Act recognizing that the Clayton Antitrust Act, for example, is an incipiency statute, and the Department has to work very quickly under the Hart-Scott-Rodino time frames in order to decide whether or not to bring a pre-merger enforcement action. This case demonstrates that CID recipients are concerned about their competitors' lawyers seeing their confidential business information. Ten of those CID recipients filed objections to the district court's intention to allow in-house counsel access to the most highly sensitive documents, and five took the trouble to show up in the district court. Yet the district court, we believe, as does Fidelity, failed to take into consideration that it's just broad disclosure, which, at least with respect to the seven documents at issue here, resulted that the court's decision was wrong because it had a broad blanket decision that all of these materials had to be accessed by Fidelity's inside counsel, and yet we know now that they did not have to be. And so in terms of reaching the brown bag decision, if this court decides to do so, we would urge the court to put a gloss, as the debt supply case did on that brown bag standard, so that it takes into consideration the importance of encouraging CID voluntary performance. Are you suggesting that if we get to the merits and it's not moot, that we would affirm on the basis of dense flying? Affirm the district court? Right. No, Your Honor. We would ask you to say that the district court erred because it applied the wrong standard in a -- excuse me, in applying the ---- What would the practical result be of that? If we were to follow your analysis and the analysis of Mr. Frederick? Well, I think that's a problem with this case, Your Honor. Like I said earlier, we do believe that that issue is moot. The practical result in terms of Fidelity here would be nothing, I believe. Mr. Frederick said that there would be some possibility if they discover ultimately that there was some type of disclosure that resulted in harm. But, excuse me, the district court, not the district court, but Fidelity, Fidelity or, I'm sorry, Oracle has, in fact, given Fidelity all the relief that they can possibly get, I believe, with respect to these seven documents. All right. Thank you. Thank you, counsel. That's all I have. All right. We'll hear from Mr. Yates, I believe. May it please the Court. I'm Christopher Yates, and I represent Oracle Corporation. In my time, I'd like to address three issues. The first is the fact that this appeal is moot. The second is the inequities of Fidelity's construction of the ACPA to an antitrust defendant, in this case Oracle. The third is FESCO's challenge to Judge Walker's brown bag balancing. Throughout, though, I think it's important, as this Court has recognized, to keep in mind what is really at issue here. We're talking not about unfettered disclosure of documents to a competitor or to the Wall Street Journal. What we're talking about here is disclosure of documents to outside counsel and some documents to in-house counsel, to two specified in-house counsel who are litigators, subject to the protections of a very strict protective order. On the mootness point, mootness is always a threshold issue, of course. The underlying case here has been over for more than a year. No appeal was taken, and Oracle, contrary to what Mr. Frederick said, has complied with a protective order by shredding FESCO's documents and certifying destruction. What that means is that under the protective order, under paragraph 22 of the protective order, which is at ER 295, that Latham & Watkins is permitted to retain copies in its – of certain documents in its files. For instance, our file for this appeal has the document that was filed under seal. However, Latham & Watkins is under court order not to disclose such files to any person except pursuant to court order or agreement of fidelity. There's nothing more for this Court to do. There's no order. There's no relief that Fidelity can provide. Roberts. Well, now, what about the argument Mr. Frederick makes about capable of repetition but evading review? Your Honor, I don't think this is such a circumstance. Most cases involving CIDs last far longer than this case. This case went from the complaint being filed to final judgment in a mere seven months. Most cases involving CIDs are price-fixing in other cases that last for years. I think, more importantly, there's nothing in the record that suggests that Fidelity has been subject to other CIDs that have resulted in litigation. Most CIDs, most investigations do never – never result in litigation. So there's – there's nothing in the record that suggests that Fidelity – there's a reasonable expectation, which I believe is the standard, that Fidelity will confront this issue again. Now, turning to the ACPA, I'd like to provide the Court with a defendant's perspective on the ACPA. Roberts. Is there anything imminent? You heard my exchange with Mr. Frederick. Do you – is there something pending or about to happen that might give them some cause to be concerned? There's nothing – there's nothing that I can imagine that would give them cause for concern, especially when you have the protective order that was entered by Judge Walker, which provides all the relief that they're entitled to. It orders Latham and Watkins not to disclose the documents to any person. Turning to the ACPA, and briefly, I'd like to discuss Fidelity's construction of the ACPA and the inequities that Fidelity's construction would result for an antitrust defendant. In this case, the complaint was filed in February of 2004. The Department of Justice, by that time, had CID power for over eight months. It had used that CID power to amass a great volume of material, to take dozens upon dozens of CID depositions. And it used that – it used that CID power to understand the – attempt to understand the market that was allegedly impacted by this proposed acquisition, to formulate its theory of the case, and ultimately to craft the complaint that it filed. Oracle, in contrast, when this complaint was filed, had a mere four months to prepare for a month-long bench trial. Now – but under Fidelity's construction of the statute, Oracle was not entitled to one page of CID material until it was, they say, directly used at either a deposition or a trial. That would permit the Department of Justice to cherry-pick the helpful information and exclude the exculpatory information. It's counter to all known principles of civil discovery and due process. It just cannot be right. It's not counter to the experience of practitioners in grand jury investigations who sit by helplessly while the government does what it's going to do in the grand jury, waiting for the hammer to fall to see whether you get indicted or not. But, Your Honor, once litigation – I think, as Your Honor pointed out, once litigation commences, I believe even under 6E … Exactly. Exactly. As Mr. Fonte pointed out, there's no support for the Fidelity's position in either the statute or in the legislative history. On the brown-bag point, I think what Fidelity is asking this Court to do is to second-guess issues that are fundamentally entrusted to the trial court and to second-guess Judge Walker's management of a highly complex case and its findings. You recall I asked Mr. Frederick about our standard of review. What's your analysis of that? Your Honor, I believe on the standard of review that this Court looks at Judge Walker's balancing under the brown-bag test, you look at that under an abusive discretion standard. But what about the legal argument suggestion? I think on the legal argument, if there truly is a legal argument, and I'll get to that in one second, I do not – I believe you would review that under de novo review. However, I don't think there's a legal argument here. I don't think this Court needs to construct a new standard, as Fidelity suggests. First of all, I think it's important to note that Fidelity told Judge Walker to apply brown-bag below. More importantly, brown-bag is a flexible standard. It's an inherently flexible standard that's sufficient to account for any of the myriad of confidentiality concerns that can arise. And here, what we're talking about and the confidentiality policies that animate the ACPA are simply that the Department of Justice does not want to permit confidential documents to be turned over to a competitor. That's the same standard that this Court applies when applying Rule 26, that competitors should not have access to highly confidential documents of another company. Now, this Court should not start down the slippery slope of constructing modified brown-bag tests for each new set of facts that arises. That's just going to lead to error below in the district courts and utter confusion. Now, Fidelity then says that Judge Walker did not appropriately balance the competing interests under brown-bag, but I think it's important for this Court to review what Judge Walker actually did in this case. He required Oracle to provide evidence substantiating its assertions that the two in-house lawyers, the two in-house litigators at issue were not involved in competitive decision-making. He asked the parties to provide answers and Oracle to provide answers to a variety of questions based upon this Court's brown-bag opinion and also the U.S. Steel opinion, which is the other leading opinion in this area out of the Federal Circuit. In a response, Oracle provided detailed declarations from the two in-house counsel and also from its lead trial counsel, Mr. Wall. That evidence, which was unrebutted, established that the in-house lawyers were not involved in competitive decision-making. And I submit that competitive decision-making is really the key thing in this balancing test. And they also established why the involvement of the in-house counsel was crucial to Oracle's defense, because, as Judge Tallman recognized, Latham and Watkins had only been recently engaged, and the in-house lawyers had been involved in the Hart-Scott-Rodino process. Now, Judge Walker then heard argument. He actually reviewed one of the Fidelity documents that's at issue in this appeal. That's at ER-263, where Judge Walker mentions that. And then he made findings applying brown-bag. Fidelity clearly disagrees with the findings that Judge Walker made, but there's no abuse of discretion. There's no clear error here. There's no support for Fidelity's suggestion that Judge Walker was required to conduct some kind of document-by-document review before he issued his or before he applied his brown-bag balancing. In practical terms, that would have brought this case to a grinding halt and would essentially be a presumption in any case with any substantial number of documents that in-house counsel are not going to be given access to any highly confidential documents. Now, Judge Walker recognized, and I think this Court's brown-bag opinion, the U.S. Steel Court recognized, that in-house counsel are not to be treated as secondhand citizens. The Densply case that Mr. Frederick referred to is a completely different circumstance. There you had a general counsel who was involved in merger and acquisition activity. He was involved in contract negotiations. Obtaining access to competitors' information about marginal costs and the like would be highly relevant to his performance of his duties. And the unrebutted evidence here is the in-house counsel had no involvement whatsoever in competitive decision-making. They were litigators. They were members of the trial team. And there was no abuse of discretion. Thank you. Roberts. Thank you, counsel. Mr. Frederick, you have some reserve time. Thank you. I'll start with waiver. At the hearing on March the 19th, counsel for Fidelity stated, and this is on excerpts of record, page 209, quote, It was Fidelity's express expectation that that information, the CID, would be afforded all of the protections available in the statute, the ACPA. As Judge Green said in the AT&T case, to which I draw the Court's attention, information that's supplied by third parties under CID is not to be produced wholesale as part of an investigation or ensuing litigation. It requires much more careful consideration with respect to who gets what. We weren't a party in the pl -- when the initial disclosure order was issued. We were invited for the limited purpose of saying, now that the disclosure has been made, is there some further protection that you can get? For that reason, this Court's decision in the United States v. Carlson, which says that there are exceptional circumstances, an issue that wasn't expressly pressed below, will be acceptable for review here. We didn't have an opportunity to contest the blanket disclosure until all of the documents had already been turned over. With respect to mootness, Mr. Yates himself in writing promised that he would not argue mootness the day before our appellate brief in this Court was filed. I direct the Court to Reply Brief footnote 6, which explains exactly the kinds of discovery concessions Mr. Yates himself was attempting to extract from Fidelity. And they strung out this process in a way that has made the mootness problem. For that reason, I think the Court ought to take into account the fact that this issue is capable of repetition, yet evading review. Fidelity now has a civil investigative demand in a merger case that it is considering how to respond to the government. Alitoso, what's your response to the claim that none of these other CIDs are on a FAFSA fast track like this one was? I mean, this is an unusual case in our experience. We've cited the statistics that in these merger cases, they tend to go much faster than the appellate process, and I would simply note for the Court that notwithstanding the fact that there are these schisms between nonparties in the department, there's not a single reported appellate decision. And that ought to speak for itself. Fidelity is here because we — The other courts found mootness. Well, because, no, they haven't — they haven't — people haven't taken appeals because it is thought that it is going to be difficult to do. But because Fidelity is a repeat player, that's why we're here. In a number of contexts, in abortion, in free speech, in the Education Act, the — this Court has said that a capable of repetition, yet evading review, a redressability problem is not going to be an impediment to the Court deciding the issue. I direct the Court to the Board of Education versus Rowley case, which we've cited in our briefs. There, the school year had ended before the Court of Appeals had an opportunity to determine whether or not the person's rights under the Handicapped Act had been satisfied. Finally, Judge Tallman, with respect to your point about the grand jury information, the Cuisinart's case, which we cited in our brief, directly addresses this, and in footnote 13 of that opinion, Judge Cabranes, who's a very respected judge, explains why this CID information should be given the exact same kind of confidentiality concerns that grand jury material is. I have more to say, but my time has expired. Roberts. Thank you, counsel. Your time, indeed, has expired. The case just argued will be submitted for decision. And we thank counsel for excellent argument in that case. Roberts. Yes. Thank you all. That was very helpful.
judges: Goodwin, O'scannlain, Tallman